FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

May 20, 2020

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| REBECCA A. BRANTLEY, MICHELLE M. NILES, and KRISTINE N. PRITCHARD,<br><br>      Plaintiffs,<br><br>  v.<br><br>HEALING LODGE OF THE SEVEN NATIONS, a corporate entity,<br><br>      Defendant. | No. 2:19-cv-00070-SMJ<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

Before the Court, without oral argument, is Defendant Healing Lodge of the Seven Nations' Motion for Summary Judgment, ECF No. 25. Plaintiffs Rebecca Brantley, Michelle Niles, and Kristine Pritchard allege they were terminated by Defendant for opposing sex-based discrimination and themselves subjected to disparate treatment on the basis of sex. Defendant contends Plaintiffs were treated equally throughout their employment and terminated for several violations of internal policy as well as state and federal laws. For the reasons that follow, the Court finds genuine disputes of material fact precluding summary judgment exist concerning all Plaintiffs' claims except with regard to equal pay.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT – 1

# BACKGROUND

Defendant Healing Lodge of the Seven Nations (the "Healing Lodge" or "Defendant") is a residential chemical dependency treatment center in Spokane Valley, Washington that serves Native Americans. *See* ECF No. 25-1 at 4. Plaintiff Kristine Pritchard was hired to work there as a member of the kitchen staff in 2010. ECF No. 25-3 at 2. Plaintiff Michelle Niles was hired as a "skills coach" in 2011 to monitor and document residents' behavior and ensure their wellbeing. ECF No. 25-4 at 2. Plaintiff Rebecca Brantley was hired in 2018 as a "skilled unit supervisor." ECF No. 25-5 at 2–3. In that role, Plaintiff Brantley was responsible for caring for residents and supervising the Healing Lodge's skills coaches, including Plaintiff Niles. *Id.* at 3; ECF No. 25-4 at 3. Defendant's employee manual provided Plaintiffs were employed at-will. *See* ECF No. 25-1 at 5.

## A.    The April 27 Incident

On April 27, 2018, Plaintiff Pritchard was preparing dinners for residents when she saw a female colleague, Program and Support Services Director Cassie Anderson, braiding a male resident's hair at a picnic table outside. ECF No. 37 at 3. Plaintiff Pritchard was concerned because she believed the Healing Lodge maintained a "no contact policy" between staff and residents. *Id.* at 3–4. Indeed, the Healing Lodge's employee manual provides that while "[t]ouch is an integral part of being human and good touch is the kind of contact that makes a person feel cared

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT – 2

1   for, loved and important . . . adult staff must avoid any type of physical contact with

2   residents that could be misunderstood or could make the resident feel

3   uncomfortable." ECF No. 25-1 at 26. Plaintiff Pritchard therefore used her personal

4   cell phone to take a picture of Anderson and the resident, though Healing Lodge

5   policy prohibits staff members from using personal cell phones while on-duty or in

6   view of residents. ECF No. 37 at 3; ECF No. 25-1 at 35. Because of the angle and

7   distance from which Pritchard took the photo, neither Anderson's nor the resident's

8   face was visible. ECF No. 37 at 10.

9       Defendant contends Plaintiff Pritchard sent the picture by text message to

10  Plaintiff Niles; though Pritchard apparently admitted doing so when first asked, she

11  later denied it, and Plaintiff Niles denied receiving it. *See* ECF No. 25-6 at 8; ECF

12  No. 37 at 11 (screenshot of text message exchange not showing picture sent); ECF

13  No. 36 at 3. The record is clear, however, that Pritchard asked Niles to "refresh" her

14  on the policy concerning "a female staff [member] doing a male resident[']s hair."

15  ECF No. 38 at 12. Plaintiff Niles responded that skills coaches were prohibited from

16  such contact, though she was unclear on whether the policy applied to Anderson but

17  that she would inquire. *Id.* Defendant contends either Plaintiff Niles or Pritchard

18  then shared the photo with Plaintiff Brantley, who in turned sent it to another

19  colleague. ECF No. 27 at 8. Plaintiffs deny this. ECF No. 40 at 6.

20      Male and female residents live and eat separately at the Healing Lodge. *See*

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT – 3

1  ECF No. 39 at 2. Because Anderson's braiding the male resident's hair occurred in

2  the outdoor meal area, it interfered with the female residents' scheduled time to eat

3  outdoors and, as the groups crossed paths, resulted in a female resident being

4  exposed to "derogatory and upsetting comments made by a male" resident. *Id.* After

5  the fact, a member of the Healing Lodge staff contacted Plaintiff Brantley to report

6  the incident was "very upsetting and disruptive" to the female resident. *Id.* at 16.

7  Plaintiff Brantley forwarded this concern to Anderson, who replied that the incident

8  was "[her] fault," and pledged to "work on doing a better job ensuring not to disrupt

9  other residents or appear that [she was] going outside the rules." *Id.* at 17. Plaintiff

10 Brantley also reported the incident to others, including her superior. *Id.* at 3–4.

11 **B.    The Investigation**

12 On May 2, 2018, Healing Lodge Manager of Human Resources Sandra

13 Brown was made aware of the April 27 incident and began an investigation. ECF

14 No. 25-6 at 14. Brown's investigation lasted approximately one week, during which

15 time she interviewed witnesses, reviewed documents, and ultimately prepared a

16 report proposing corrective action for review by the Healing Lodge's Executive

17 Director, Rebecca Crocker. *See id.* at 14–17. Brown identified "[l]ack of

18 cooperation and inconsistency/omission of fact in statements" by Plaintiffs as

19 "[i]mpediments" to her investigation, though she did not expressly catalog these

20 omissions and inconsistencies. *Id.* at 15.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT – 4

1        Concerning Anderson's conduct, Brown wrote Anderson had assumed it

2 would be acceptable to braid the resident's hair because she knew of others having

3 done so in the past. *Id.* at 15–16. Brown also found there was "an abundance of

4 evidence of an inequity in restriction of girls' vs. boys' movements" resulting from

5 Anderson's actions. *Id.* at 15. However, Brown wrote Anderson acted "in plain view

6 of multiple staff and other residents to ensure clear evidence of no malicious intent,"

7 and concluded her actions did not evidence "any form of malicious behavior or

8 intent." *Id.* at 16. Brown therefore recommended Anderson only be verbally

9 warned. *Id.* at 17. She also recommended management affirmatively "inform staff"

10 that it was aware of the April 27 incident and notify them Anderson was "cleared

11 of any impropriety." *Id.* at 16.

12        Much of Brown's report centered on Plaintiffs' actions. *See id.* at 14–17.

13 Brown wrote that Pritchard used her personal cell phone to capture the picture of

14 Anderson's actions, in violation of Healing Lodge policy. *Id.* at 14–16. Brown also

15 wrote Pritchard sent the picture to Niles, who in turn sent it to Brantley, though she

16 noted both Niles and Brantley denied ever having received the picture. *Id.* at 14.

17 Brown ultimately concluded Plaintiff Pritchard violated Healing Lodge policy by

18 using her personal cell phone to take a picture of a resident "possibly in view of

19 other residents." *Id.* at 15–16. Brown appears to have concluded Plaintiff Pritchard

20 violated the Healing Lodge's dispute resolution procedures by explaining she took

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT – 5

the picture of Anderson "for evidence and to seek guidance" although she never consulted her superiors or human resources. *Id.* at 16.

Brown also concluded all three Plaintiffs, by sending and receiving the picture, violated the Healing Lodge's policy on "telecommunications systems," though her report cited a provision of the employee handbook that appears limited to technology owned by Defendant. *Id.* Finally, it appears Brown concluded Plaintiffs' actions violated the Health Insurance Portability and Accountability Act (HIPAA) by taking and sending a photo of a resident, though the report contained no explanation for this conclusion. *Id.* In addition to citations to the Healing Lodge employee handbook in effect from 2016 through the time in question, she also cited provisions of an earlier manual from 2011. *Id.* at 14–17. Ultimately, Brown's report concluded Plaintiffs had "violated [Healing Lodge] policy, practices, and [Washington] State/Federal Laws," and recommended each be fired. *Id.* at 17.

Brown testified that she provided her report to Executive Director Crocker who, based on Brown's "information and [] research," decided to fire Plaintiffs. ECF No. 25-6 at 10. On May 14, 2018, Plaintiff Brantley and Pritchard received termination letters, signed by Brown, announcing Defendant had "concluded you are in violation of numerous Healing Lodge policies and procedures and established Federal HIP[A]A Laws." ECF No. 25-5 at 29; ECF No. 25-3 at 11. Plaintiff Niles was apparently never given a letter formalizing her termination, though she testified

1    she was fired for "br[eaking] policy" and violating HIPAA. ECF No. 25-4 at 5–6.

2    **C.    Plaintiffs' Alleged Protected Activities**

3        Plaintiffs allege Defendant used the April 27 incident as a pretext to fire them

4    for reporting "safety concerns," "staff/resident ratio[] violations," violations of

5    "medication dispensing laws," and "the inequitable treatment of male and female

6    staff." ECF No. 36 at 3; ECF No. 37 at 6; ECF No. 38 at 5. For example, after a

7    Healing Lodge resident attacked other residents and staff and then attempted to

8    harm herself, Plaintiff Brantley contends she was reprimanded for "allowing [her]

9    staff to question the [Healing Lodge]'s conduct, for not having 'management's

10    back,'" and was directed to discipline her staff for "'gossiping.'" ECF No. 39 at 6.

11    She also alleges she was directed not to "associate with fellow employees outside

12    the workplace," though male staff were not similarly directed and she was

13    "reprimanded for questioning" the training, and that she complained about pay

14    inequities between male and female staff, staff-to-resident ratios, and inadequate

15    medication-distribution training for staff members. *Id.* at 7–8; ECF No. 25-5 at 31.

16        Plaintiff Niles alleges that in the months preceding her termination, she

17    complained to Plaintiff Brantley, her superior, about inadequate staff-to-resident

18    ratios making it difficult to take regular breaks, safety concerns related to a

19    physically violent female resident, and restrictions on socializing with colleagues

20    outside the workplace not placed on male employees. ECF No. 36 at 3–6. Plaintiff

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT – 7

Pritchard alleges that "[d]irectly prior to [her] termination" she "discussed with coworkers how [she] felt it was inequitable that [she] was passed over for" a promotion to supervisor of the kitchen. ECF No. 37 at 2.

**D.    Procedural History**

On February 12, 2019, Plaintiffs sued Defendant in the Spokane County, Washington Superior Court. *See* ECF No. 1-1 at 4. Plaintiffs alleged wrongful termination and discrimination on the basis of sex and in violation of public policy, as well as unlawful retaliation for opposing sex-based discrimination. *Id.* at 12–13. Defendants removed the suit to this Court, invoking federal question jurisdiction based on Plaintiffs' federal claims. ECF No. 1. On March 10, 2020, Defendant moved for summary judgment on all Plaintiffs' claims. ECF No. 25.

## LEGAL STANDARD

The Court must grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In ruling on a summary judgment motion, the Court must view the evidence in the light most favorable to the nonmoving party. *See Tolan v. Cotton*, 572

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT – 8

U.S. 650, 657 (2014) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)). Thus, the Court must accept the nonmoving party's evidence as true and draw all reasonable inferences in its favor. *See Anderson*, 477 U.S. at 255. The Court may not assess credibility or weigh evidence. *See id.* Nevertheless, the nonmoving party may not rest upon the mere allegations or denials of its pleading but must instead set forth specific facts, and point to substantial probative evidence, tending to support its case and showing a genuine issue requires resolution by the finder of fact. *See Anderson*, 477 U.S. at 248–49.

## DISCUSSION

### A.    Retaliatory Discharge

Defendant first seeks summary judgment on Plaintiffs' claims that their terminations were retaliatory. ECF No. 25 at 9–11. Title VII of the Civil Rights Act of 1964 prohibits discrimination or retaliation against an employee who takes action to enforce a protected right such as opposing sex-based discrimination. 42 U.S.C. § 2000e-3(a)(1); *see also Yartzoff v. Thomas*, 809 F.2d 1371, 1375 (9th Cir. 1987). The Washington Law Against Discrimination (WLAD) prohibits retaliation for the exercise of a protected right under a similar rubric. *See* Wash. Rev. Code § 49.60.210.

Courts have consistently recognized that "smoking gun" evidence of retaliatory motive is rare because proof resides in the employer's mental processes

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT – 9

and savvy employers "infrequently announce their bad motives orally or in writing." *Hill v. BCTI Income Fund-I*, 23 P.3d 440, 445 (Wash. 2001), *abrogated on other grounds by Mikkelsen v. Pub. Util. Dist. No. 1 of Kittitas Cty.*, 404 P.3d 464 (Wash. 2017) (citations omitted). Thus, to ensure plaintiffs are not unfairly denied their day in court, courts evaluating claims under WLAD or Title VII utilize the burden-shifting framework announced by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), to "'compensate for the fact that direct evidence of intentional discrimination is hard to come by.'" *Hill*, 23 P.3d at 445 (quoting *Price Waterhouse v. Hopkins*, 490 U.S. 228, 271 (1989)).

Under this framework, the employee-plaintiff must first establish a prima facie case of retaliatory discharge, comprised of three elements:

> [T]hat (1) [s]he engaged or was engaging in activity protected under Title VII, (2) the employer subjected [her] to an adverse employment decision, and (3) there was a causal link between the protected activity and the employer's action.

*Yartzoff*, 809 F.2d at 1375. An employee who alleges retaliation for reporting illegal discrimination "need only prove that her complaints went to conduct that was at least arguably a violation of the law, not that her opposition activity was to behavior that would actually violate the law against discrimination." *Estevez v. Faculty Club of Univ. of Washington*, 120 P.3d 579, 590 (Wash. Ct. App. 2005) (citing *Kahn v. Salerno*, 951 P.2d 321, 332 (Wash. Ct. App. 1998)); *see also Little v. Windermere Relocation, Inc.*, 301 F.3d 958, 969 (9th Cir. 2002) (holding opposition activity

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT – 10

protected under Title VII where it is based on a "reasonable belief" that conduct is unlawful).

If the employee makes out a prima facie case of retaliation, the burden shifts to the employer "to articulate a legitimate nondiscriminatory reason for its employment decision." *Lowe v. City of Monrovia*, 775 F.2d 998, 1005 (9th Cir. 1985), *as amended*, 784 F.2d 1407 (9th Cir. 1986) (citing *McDonnell Douglas Corp.*, 411 U.S. at 802–05). If the employer does so, the burden shifts back to the employee to demonstrate "that the employer's alleged reason for the adverse employment decision is a pretext for another motive which is discriminatory." *Id.*

The plaintiff may demonstrate the employer's explanation is pretextual either "directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256, (1981) (citing *McDonnell Douglas Corp.*, 411 U.S. at 804–805)). At the summary judgment stage, where the plaintiff successfully carries her burden of production, and the "record contains reasonable but competing inferences of both discrimination and nondiscrimination, 'it is the jury's task to choose between such inferences.'" *Hill*, 23 P.3d at 449 (quoting *Carle v. McChord Credit Union*, 827 P.2d 1070, 1077 (Wash. Ct. App. 1992)).

Defendant argues Plaintiffs' Title VII claims fail as a matter of law because

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT – 11

none of the three formally reported, nor complained to their supervisors about, unlawful discrimination. ECF No. 25 at 9–10. In some respects, Defendant is correct—Plaintiffs appear to contend they were terminated in retaliation for complaining about "health and safety concerns," inadequate staffing, "violations of the State medication distribution laws," and "other issues with application of Lodge safety procedures." ECF No. 35 at 10. But Plaintiffs fail to establish how it was reasonable for them to believe these issues constituted violations of state or federal anti-discrimination laws. *See Estevez*, 120 P.3d at 590; *Little*, 301 F.3d at 969. Thus, even if Plaintiffs could establish they were fired for raising these concerns, they fail to explain how that would be actionable under state or federal law.

However, each Plaintiff also alleges she complained about discrimination on the basis of sex at the Healing Lodge. Plaintiff Pritchard argues she "complained to coworkers about being passed over for the promotion to Kitchen Supervisor in favor of a male applicant who had not previously been affiliated or familiar with the Healing Lodge's nutrition program, and whom Pritchard was also required to train." ECF No. 35 at 10. Though Pritchard apparently never made a formal complaint, Brown testified during her deposition that she was aware Pritchard "was making verbal complaints" before she was terminated. ECF No. 54 at 18.

Title VII makes it unlawful to retaliate against an employee who "has opposed" unlawful discrimination. 42 U.S.C. § 200e-3(a). Protected opposition

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT – 12

activity does not require the employee to make a formal complaint, nor even engage in "active, consistent" activity against unlawful discrimination. *Crawford v. Metro. Gov't of Nashville & Davidson Cty., Tenn.*, 555 U.S. 271, 276 (2009). Rather, to "oppose" unlawful discrimination within the meaning of Title VII only requires an employee to "resist or antagonize . . . ; to contend against; to confront; resist; withstand." *Id.* (quoting Webster's New International Dictionary 1710 (2d ed. 1957)); *see also Lodis v. Corbis Holdings, Inc.*, 292 P.3d 779, 788 (Wash. Ct. App. 2013) (holding WLAD's opposition clause only requires an employee "to confront with hard or searching questions or objections" or "to offer resistance to, contend against, or forcefully withstand" unlawful discrimination) (citation omitted).

Accordingly, even an employee's "ostensibly disapproving account of sexually obnoxious behavior toward her by a fellow employee" can support a claim under Title VII if the employee shows it "antagonized her employer to the point of sacking her on a false pretense." *Crawford*, 555 U.S. at 276. Thus, if Plaintiff Pritchard can establish Defendant was sufficiently "antagonized" by her vocal opposition to what she considered a sexist hiring process and used the April 27 incident as a pretense to fire her, she would be entitled to recover under Title VII. *See id.; Lodis*, 292 P.3d at 788; *see also Archuleta v. Corr. Corp. of Am.*, 735 Fed. App'x 238, 240 (9th Cir. 2018) (citing *Crawford*, 555 U.S. at 276) (holding plaintiff

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT – 13

stated claim for retaliation under Title VII based on "clearly convey[ing] her discomfort with" perceived sexual harassment).

Both Plaintiffs Brantley and Niles also assert they complained about perceived sex-based inequities at the Healing Lodge prior to their terminations. Plaintiff Brantley testified she and her staff in the Healing Lodge's female wing— including Plaintiff Niles—were directed they "should not associate with each other outside of work," though Plaintiff Brantley learned male employees were not given equivalent direction, and both Plaintiffs Brantley and Niles voiced complaints about this disparate policy. ECF No. 53 at 19–26. Defendant argues this is insufficient to support a claim for retaliation because the policy was not formalized in the employee handbook, but rather announced only as a suggestion. ECF No. 46 at 5. But as set out above, neither Title VII nor WLAD require an employee's protected activity *actually* evidence illegal discrimination, only that the employee reasonably believe it does. *See Estevez*, 120 P.3d at 590; *Little*, 301 F.3d at 969.

Plaintiff Niles also testified she complained about pay inequities between male and female staff members, though her own pay was not reduced. ECF No. 52 at 23–24. Defendant argues this conduct cannot support a claim for retaliation both because Plaintiff Niles was not a victim of the discrimination herself, and because she never filed a formal complaint. ECF No. 46 at 5–6. But as set out above, Title VII's protection of "opposition" behavior requires neither. *See Crawford*, 555 U.S.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT – 14

at 276. Defendant also contends these allegations are insufficient because Plaintiff Niles never complained to a superior higher than Plaintiff Brantley, but Defendant cites no authority for the proposition that an employee must elevate her complaints to a certain tier of an employer's organizational leadership to obtain the protections of Title VII. ECF No. 46 at 5–6. As such, Plaintiffs have established a prima facie case of retaliation, and the burden shifts to Defendant to articulate a legitimate reason for discharging Plaintiffs, which it has done. *See* ECF No. 25-6 at 10.

Thus, the burden shifts back to Plaintiffs to show that the proffered justification for their terminations was pretextual. As set out above, Plaintiffs can do so "by showing that the employer's proffered explanation is unworthy of credence." *Burdine*, 450 U.S. at 256. Having reviewed the record, the Court finds Plaintiffs have produced sufficient evidence from which a reasonable juror could find Brown's report unworthy of credence and Defendant's proffered justification was a mere pretext for a retaliatory motive. *See Lowe*, 775 F.2d 1005.

Though Brown's investigation ostensibly began in response to a complaint that Anderson's actions were in violation of Healing Lodge policy and resulted in a harmful incident for one of the Healing Lodge's female residents, her final report focused largely on Plaintiffs' reporting of, and response to, the incident. *See* ECF No. 25-6 at 14. Moreover, though Brown recommended immediate termination for Plaintiffs—whose primary infractions were violations of internal policy in reporting

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT – 15

concern over Anderson's conduct—Brown recommended Anderson only be given a verbal reprimand, and that Defendant's management expressly announce that Anderson had been "cleared of any impropriety." *Id.* at 16. Further, Brown's articulations of the ways in which Plaintiffs allegedly violated Healing Lodge policy were vague, lightly documented, and cited provisions of an outdated employee handbook. *See id.* at 17 ("Allegations substantiated: [Plaintiffs] have violated [Healing Lodge] policy, practices, and WA State/Federal Laws."); ECF No. 37 at 54 ("I acknowledge and understand that this handbook supersedes any and all prior handbooks issued."). And as Plaintiffs point out, what appears to have been Brown's most damning finding—that Plaintiffs shared a picture of a resident by text message using their personal cell phones—was supported by no documentation and denied by each Plaintiff. *Id.*

Particularly at the summary judgment stage, the Court finds Plaintiffs have produced sufficient evidence from which a reasonable juror could conclude Defendant's proffered justification for firing Plaintiffs was "unworthy of credence" and was instead pretext for its retaliatory motive. *Burdine*, 450 U.S. at 256; *see also Hill*, 23 P.3d at 44 (holding reasonable but competing inferences of discrimination sufficient to survive summary judgment). In sum, while many of the complaints and concerns on which Plaintiffs base their retaliation claims are insufficient to permit recovery under Title VII or WLAD, each has come forward with evidence from

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT – 16

which a rational juror could conclude Defendant terminated her in retaliation for opposing perceived discrimination on the basis of sex.

**B.    Wrongful Discharge in Violation of Public Policy**

Defendant next moves for summary judgment on Plaintiffs' claims that their terminations were in violation of public policy. In Washington, as in many states, unless specified, an employment contract is terminable at will by either the employee or the employer. *Thompson v. St. Regis Paper Co.*, 685 P.2d 1081, 1084 (Wash. 1984). Even so, a Washington employer may not rely on the terminable at will doctrine to "shield [its] action which otherwise frustrates a clear manifestation of public policy." *Id.* at 1088. Accordingly, Washington recognizes the tort of wrongful discharge in violation of public policy. *Id.* at 1089.

The framework governing such claims is similar to that for allegations of retaliatory discharge under Title VII or WLAD. The employee-plaintiff must first establish a prima facie case of retaliatory discharge, comprised of three elements:

> (1)[T]hat he or she exercised [a] statutory right . . . or communicated to the employer an intent to do so . . . ; (2) that he or she was discharged; and (3) that there is a causal connection between the exercise of the legal right and the discharge, *i.e.*, that the employer's motivation for the discharge was the employee's exercise of or intent to exercise the statutory rights.

*Wilmot v. Kaiser Aluminum & Chem. Corp.*, 821 P.2d 18, 28–29 (1991). If the plaintiff succeeds at this first step, the burden shifts to the employer to "articulate a

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT – 17

legitimate nonpretextual nonretaliatory reason for the discharge." *Id.* at 29. If the employer does so, the burden shifts back to the employee to demonstrate that the employer's proffered justification was pretextual or, even if it was legitimate, that the employer's retaliatory motive was a "substantial or important factor motivating the discharge." *Id.* at 29, 30.

Washington courts have held WLAD evinces a clear public policy of eliminating sex-based discrimination, and thus the analysis of these claims closely tracks the above concerning Plaintiffs' claims of retaliatory discharge. *See Roberts v. Dudley*, 993 P.2d 901, 911 (Wash. 2000), *as amended* (Feb. 22, 2000) ("[W]e find the plaintiff has properly stated a cause of action for the tort of wrongful discharge based on the clearly articulated public policy against sex discrimination in employment."); *Wahl v. Dash Point Family Dental Clinic, Inc.*, 181 P.3d 864, 868–70 (Wash. Ct. App. 2008).

A plaintiff may satisfy the requirement of causation by demonstrating the employer's knowledge of the protected activity together with "proximity in time between that activity and the termination." *Mackey v. Home Depot USA, Inc.*, 459 P.3d 371, 384 (Wash. Ct. App. 2020) (citing *Cornwell v. Microsoft Corp.*, 430 P.3d 229, 236–37 (Wash. 2018)). Thus, "[i]f the employer knows of the protected activity and the termination follows 'shortly thereafter, it is a reasonable inference that these actions were in retaliation' for the activity." *Id.* (citing *Cornwell*, 430 P.3d

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT – 18

at 236). In this case, as explained above, Plaintiffs voiced opposition to perceived sex-based discrimination in the weeks and months preceding their termination, and thus a reasonable juror would be justified in inferring their protected activity played a causal role in their terminations. *See* ECF No. 39 at 5–8; ECF No. 53 at 19–26; ECF No. 54 at 18. And as explained above, the Court finds Plaintiffs have adduced sufficient evidence from which a rational juror could find the proffered justification for Defendant's decision to terminate them was pretextual, or at the very least that Defendant's retaliatory motive played a substantial role in that decision. Accordingly, the Court finds summary judgment is inappropriate.

## C.    Sex Discrimination

Lastly, Defendant moves for summary judgment on Plaintiffs' claims under Title VII and WLAD that they were discriminated against on account of their sex. ECF No. 25 at 12–17. To establish such a claim, Plaintiffs must first establish a prima facie case of unlawful discrimination by showing (1) they were members of a protected class, (2) they were qualified for and performed their job satisfactorily, (3) they were subject to adverse employment action, and (4) employees outside the protected class were treated more favorably. *See McDonnell Douglas Corp.*, 411 U.S. at 802; *Marquis v. City of Spokane*, 922 P.2d 43, 52 (Wash. 1996). If they succeed, the analysis tracks the second and third *McDonnell Douglas* steps. *See id.*

Defendant argues Plaintiffs Brantley and Niles' discrimination claims fail

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT – 19

because they cannot show how they were treated differently than male employees. ECF No. 25 at 13–16. As Defendant points out, though both alleged pay inequity between similarly situated male and female employees, Plaintiffs have failed to produce credible evidence establishing or quantifying the alleged inequity, and thus summary judgment on that claim is appropriate. However, both Plaintiffs Brantley and Niles complained to superiors that female employees, including themselves, were directed not to associate with coworkers outside of work, a limitation not placed on their male counterparts. *See* ECF No. 53 at 19–26. Moreover, Plaintiffs argue that while each was terminated allegedly for taking part in photographing a resident, male employees were permitted to photograph holiday parties at the Healing Lodge without incident. *See* ECF No. 52 at 32. Plaintiff Niles in fact testified that "male skills coaches . . . got away with everything." *Id*. If credited, a rational juror could conclude from this testimony that Plaintiffs Brantley and Niles were treated differently than their similarly qualified male counterparts.[1]

Defendant also contends Plaintiff Pritchard's discrimination claim, premised on the hiring of an outside male candidate to fill the role of kitchen supervisor, must fail because the Healing Lodge's hiring decision was justified based on the male

---

[1] Plaintiffs did not respond to Defendant's argument that summary judgment was appropriate on Plaintiff Brantley's claim concerning discriminatory treatment of non-Native Americans, *see* ECF No. 25 at 16, and the Court therefore concludes Plaintiffs are no longer pursuing this claim and grants summary judgment in favor of Defendant.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT – 20

candidate's qualifications, not on Defendant's discriminatory animus. ECF No. 25 at 17. But as Defendant acknowledges, the Healing Lodge employee handbook states that it endeavors to promote "from within whenever possible," and though Defendant credibly contends the outside candidate was simply more qualified, Plaintiffs point to evidence that the candidate had no experience in the Healing Lodge organization and took time to get up to speed. ECF No. 37 at 25; ECF No. 40 at 14. Accordingly, the Court finds Plaintiff Pritchard has also come forward with sufficient evidence from which a reasonable juror could find similarly-situated males were treated more favorably than her.

As such, the Court finds Plaintiffs have met their burden of coming forward with specific and material facts sufficient to establish a prima facie case of sex-based discrimination in their employment, and summary judgment is inappropriate. *See Fulton v. State, Dep't of Soc. & Health Servs.*, 279 P.3d 500, 506 (2012)

## CONCLUSION

As set out above, Plaintiffs have provided sufficient evidence that they were subject to discriminatory treatment while employed at the Healing Lodge and ultimately terminated in retaliation for opposing sex-based discrimination. Because genuine issues of material fact remain, Defendant's motion for summary judgment is denied on all Plaintiffs' claims with the exception of Plaintiffs Brantley and Niles' claim of sex-based pay inequity.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT – 21

1    Accordingly, **IT IS HEREBY ORDERED**:

2         Defendant's Motion for Summary Judgment, **ECF No. 25**, is

3    **GRANTED IN PART** and **DENIED IN PART**, as described above.

4    **IT IS SO ORDERED.** The Clerk's Office is directed to enter this Order and

5    provide copies to all counsel.

6    **DATED** this 20th day of May 2020.

7    _____
     SALVADOR MENDOZA, JR.

8    United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT – 22